# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
Geragos@Geragos.com

MARK J. GERAGOS          (SBN: 108325)
mark@geragos.com
ALEXANDRA KAZARIAN   (SBN: 244494)
ak@geragos.com
MATTHEW M. HOESLY      (SBN: 289593)
mhoesly@geragos.com

**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
HARMEET K. DHILLON     (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER          (SBN: 231335)
mmeuser@dhillonlaw.com

*Attorneys for Plaintiff,*
CALM VENTURES, LLC dba PINEAPPLE HILL SALOON AND GRILL

## UNITED STATES DISTRICT COURT FOR

## THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALM VENTURES LLC**, a California Limited Liability Company dba **PINEAPPLE HILL SALOON & GRILL**,<br><br>Plaintiff, | CASE NO.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

vs.

**GAVIN NEWSOM**, in his official
capacity as Governor of California;
**XAVIER BECERRA**, in his official
capacity as the Attorney General of
California; **ERICA S. PAN, M.D.,
M.P.H.**, in her official capacity as the
Acting State Public Health Officer for
the California Department of Public
Health, State of California—Health and
Human Services Agency,

Defendants.

*Current lockdown policies are producing devastating effects on short and
long-term public health. The results (to name a few) include lower
childhood vaccination rates, worsening cardiovascular disease outcomes,
fewer cancer screenings and deteriorating mental health- leading to
greater excess mortality in years to come, with the working class and
younger members of society carrying the heaviest burden.*

*....*

*The most compassionate approach that balances the risks and benefits of
reaching herd immunity, is to allow those who are at minimal risk of death
to live their lives normally to build up immunity to the virus through
natural infection, while better protecting those who are at highest risk. We
call this Focused Protection.*

*....*

*Those who are not vulnerable should immediately be allowed to resume
life as normal ...*

~ The Great Barrington Declaration – signed by over 51,970 medical
and public health scientists and medical practitioners from around the
world and across political ideologies.[1]

---

[1] Available as of the date of filing at https://gbdeclaration.org/

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COME the above-named Plaintiff Calm Ventures LLC dba Pineapple Hill Saloon & Grill ("Plaintiff" or "Pineapple Hill"), by and through its attorneys of record, Geragos & Geragos, APC and Dhillon Law Group, Inc., as and for claims against the above-named Defendants Gavin Newsom ("Newsom"), in his official capacity as Governor of California; Xavier Becerra ("Becerra"), in his official capacity as Attorney General of California and Erica S. Pan ("Dr. Pan"), M.D., M.P.H., in her official capacity as the Acting State Public Health Officer for the California Department of Public Health, State of California—Health and Human Services Agency (hereinafter collectively referred to as "Defendants"), alleges as follows (this "Complaint").

## NATURE OF ACTION

1.      Plaintiff is a restaurant located in Los Angeles County. As a result of Defendants' Executive Orders and Public Health Orders, Plaintiff has been unable to fully utilize its leased property by serving dining opportunities to the general public. However, just 20 feet away, a major Hollywood production was recently in full operation where it had an outdoor tent set up and was permitted to serve meals to its team of employees and contractors.

2.      Defendants, in a gross abuse of their power, have seized the Coronavirus pandemic to expand their authority by unprecedented lengths, depriving Plaintiff and all other similarly situated small business owners in California of fundamental rights protected by the U.S. and California Constitutions, including freedom assembly and due process and equal protection under the law. It is this Court's duty to defend these constitutional principles by safeguarding the many rights and liberties of Californians such as Plaintiff that Defendants so brazenly, arbitrarily and capriciously violate.

3.      This Action presents facial and as-applied challenges to the California Department of Public Health, State of California—Health and Human Services Agency's December 3, 2020 Regional Stay At Home Order (the "Regional Order") attached here as "**Exhibit 1**" and the December 6, 2020 Supplemental Regional Order ("Supplemental Order") attached here as "**Exhibit 2**", which violate the constitutional

3

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

rights of Plaintiff. The Regional Order and the Supplemental Order will be referred to collectively as the "Regional Orders" in this Complaint.

4.      This Action also presents facial and as-applied challenges to the March 19, 2020 Executive Order attached here as "**Exhibit 3**" and the Executive Order dated May 4, 2020 that modified the March 19, 2020 Executive Order attached here as "**Exhibit 4**", which violate the constitutional rights of Plaintiffs. The two Executive Orders will be referred to collectively as the "Executive Orders" in this Complaint.

5.      The Regional Orders and Defendants' enforcement thereof violate (I) the Freedom of Assembly Clause of the First Amendment; (II) substantive rights protected by the Due Process Clauses of the Fifth and Fourteenth Amendments and (III) the Equal Protection Clause of the Fourteenth Amendment.

6.      The Executive Orders and Defendants' enforcement thereof violate substantive and procedural rights protected by the Due Process Clauses of the Fifth and Fourteenth Amendment.

## JURISDICTION AND VENUE

7.      This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiffs' constitutional rights to freedom of assembly, due process, and equal protection rights under the First and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

8.      The Central District of California is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants maintain offices, exercise their authority in their official capacities, and will enforce the Orders; and it is the District in which substantially all of the events giving rise to the claims occurred.

4

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**PARTIES**

9.      At all relevant times, Plaintiff Calm Ventures, LLC dba Pineapple Hill Saloon & Grill ("Plaintiff" or "Pineapple Grill") is and was a limited liability company organized and authorized to do business and doing business in the State of California. Plaintiff owns, operates, and/or manages an old-fashioned, dimly lit, quiet restaurant and bar with a fireplace that serves simple American-inspired fare located in the heart of Sherman Oaks Square at 4454 Van Nuys Blvd N, Sherman Oaks, California 91403. At all relevant times, Plaintiff has complied with existing local and state orders relating to the statewide effort to curb the spread of COVID-19, and in doing so, has invested considerable time and resources into ensuring a safe and secure CDC-compliant workplace for its employees and patrons, including mandatory mask wearing, socially-distanced outdoor dining, sanitized surfaces after each patron use and temperature checks for employees.

10.     Defendant Gavin Newsom is made a party to this Action in his official capacity as the Governor of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, § 1. Newsom signed both the March 19, 2020 and the May 4, 2020 Executive Orders.

11.     Defendant Xavier Becerra is made a party to this Action in his official capacity as the Attorney General of California. Under California law he is the chief law enforcement officer with supervision over all the execution of laws in the State. Cal. Const. Art. V, § 13.

12.     Defendant Erica S. Pan, MD, MPH is made a party to this Action in her official capacity as the Acting State Public Health Officer for the California Department of Public Health, State of California—Health and Human Services Agency. She signed the at-issue Regional and Supplemental Orders.

13.     Each and every Defendant acted under color of state law with respect to all acts or omissions herein alleged.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**GENERAL FACTUAL ALLEGATIONS**

14.      On or about March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of the novel coronavirus, also known as COVID-19.[2]

15.      Since the initial outbreak of COVID-19 in the United States in February and March 2020, Defendants have increasingly restricted—where not outright banned— Plaintiff's engagement in constitutionally protected activities.

16.      For example, California Governor Gavin Newsom issued a "State of Emergency" order on March 4, 2020 in response to the threat of the spread of COVID-19 throughout California's communities (Exhibit 3). In so doing, Newsom subsequently issued Executive Order N-33-20 on March 19, 2020, which, among other things, mandated that "all residents are directed to immediately heed the current State public health directives."[3]

17.      On or about March 19, 2020, Dr. Sonia Angell, who was then serving as the California State Public Health Officer, acting pursuant to the authority conferred by Governor Newsom's State Order, issued an order which designated a list of "Essential Critical Infrastructure Workers." The Order incorporated by reference the U.S. Government's 16 critical infrastructure sectors[4] whose assets, systems, and networks,

---

[2] *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, whitehouse.gov (Mar. 13, 2020), available as of the date of filing at https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[3] Available as of the date of filing at https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf

[4] Including the: (1) Chemical Sector, (2) Commercial Facilities Sector, (3) Communications Sector, (4) Critical Manufacturing Sector, (5) Dams Sector, (6) Defense Industrial Base Sector, (7) Emergency Services Sector, (8) Energy Sector, (9) Financial Services Sector, (10) Food and Agriculture Sector, (11) Government Facilities Sector, (12) Healthcare and Public Health Sector, (13) Information Technology Sector,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof. The Order provided that "Californians working in these 16 critical infrastructure sectors [would] continue their work because of the importance of these sectors to Californians' health and well-being." All other businesses and organizations were ordered either to cease all operations or to operate under substantial restrictions. Persons not employed in the 16 critical infrastructure areas were required to stay home except as necessary to obtain necessities such food, prescriptions, and healthcare."[5]

18.     Further, Newsom declared that "this Order is being issued to protect the public health of Californians" and that "our goal is simple, we want to bend the curve, and disrupt the spread of the virus." Thereafter, Newsom directed the Office of Emergency Services to "take all necessary steps to ensure compliance with this Order" and that the "Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665."[6]

19.     As a result of the issuance of Newsom's Order, California businesses, such as Plaintiff's which were not part of the 16 "critical infrastructure sectors" described above, were therefore deemed "Non-Essential" businesses, and effectively ordered, under penalty of fine and imprisonment, to shut down.

---

(14) Nuclear Reactors Materials, and Waste Sector, (15) Transportation Systems Sector, and (16) Water and Wastewater Systems Sector.

[5] Available as of the date of filing at https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Health%20Order%203.19.2020.pdf

[6] Section 8665 of the California Government Code provides that: "Any person who violates any of the provisions of this chapter…shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

20.     In issuing his March 4, 2020 State of Emergency and March 19, 2020 Stay-at-Home Order, Newsom specified that California's response to the coronavirus pandemic "must be done using <u>a gradual, science-based and data-driven framework</u>" with the objectives of reducing social, emotional, and economic disruptions.

21.     On May 4, 2020, Newsom, again acting pursuant to emergency powers under State Law, issued Executive Order N-60-20. This order permitted businesses to begin reopening in stages, as determined by the State Public Health Officer. It also directed the State Public Health Officer to develop criteria to determine "whether and how … local health officers may … issue directives less restrictive than measures … implemented on a statewide basis pursuant to the statewide directives of the State Public Health Officer." (*See* Exhibit 4).

22.     Newsom has abused his Emergency Powers to give dictatorial power to an unelected, appointed public bureaucrat.

23.     Dr. Pan, an unelected, appointed public bureaucrat is issuing orders that have full force of law. These shutdown orders are not being deliberated and enacted by the legislature nor are they following California law for prorogating administrative regulations (See Cal Govt. Code §11340 *et seq.*).

24.     Under California law, Newsom does have the power to suspend "regulatory statutes" but the California Emergency Service Act does not give him the authority to suspend the California Constitution, laws of general applicability, or rights guaranteed by the U.S. Constitution. (Cal. Govt. Code §8571.)

25.     Federal courts have authority over internal delegations of power between state branches of government when "the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizens are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law[.]" *Gundling v. City of Chicago*, 177 U.S. 183, 188 (1900).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

26.     Federal courts have authority to review "ordinances, and even legislative enactments … with a view to determining whether the law or ordinance is a lawful exercise of the police power[.]" *Caroline Dobbins v. City of Los Angeles*, 195 U.S. 223, 236 (1904).

27.     On May 7, 2020, State Public Health Officer Dr. Angell issued an order permitting the gradual reopening of businesses and activities in California in stages. The order provided for four stages of gradual reopening, with the final stage, Stage 4, consisting of an end to all stay-at-home orders and a full reopening of businesses. As a result, and on or about the beginning of June 2020, Plaintiff's business re-opened for indoor dining, but was only allowed to do so at 50% capacity.

28.     Thereafter, and on July 13, 2020, the State Public Health Officer issued a further order directing all restaurants in the State of California, such as Plaintiff's, to again cease indoor dining service. The order applied to all restaurants regardless of ICU bed capacity availability or the number of deaths experienced in each county. As a result of the July 13, 2020 order, Plaintiff was also unable to recoup the cost of implementing the safety measures imposed by the May 7, 2020 order as a condition to offering indoor dining to their customers.

29.     On August 28, 2020, Defendant Dr. Pan implemented a statewide order that abandoned the previous, staged re-opening plan promulgated in the May 7, 2020 order and dictated that counties would be classified according to a new plan entitled "Blueprint for a Safer Economy" under which a color-coded "tier" system would be used. Under this new color-coded tiered system, each California county is placed in one of four tiers: Purple, Red, Orange, and Yellow—ranging from most to least restrictive, respectively. Unlike the previous staged reopening plan under the May 7, 2020 order, the current "tier" system under the August 28, 2020 order does not provide ***any*** criteria under which California's businesses and economy would be permitted to fully reopen. Under the respective tiers established pursuant to the August 28, 2020 order, restaurants, such as Plaintiff's establishment, are required to: (1) cease all indoor dining

9

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(Purple tier); (2) limit indoor dining capacity to 25% (Red tier); or (3) limit indoor dining capacity to 50% (Orange and Yellow tiers).

30.     In making public health decisions, it is important for health officials—who are unelected and thus, unaccountable to the general public—to weigh the overall risk of the given disease to the overall benefits of the imposed public health policy.

31.     Pursuant to the Center for Disease Control's ("CDC") "Considerations for Restaurant and Bar Operators," updated November 18th, 2020, outdoor dining may occur with relative safety at restaurants if precautionary measures are observed, including but not limited to, social distancing and mask wearing by servers and by patrons (when not eating).

32.     The CDC includes outdoor dining in the second lowest tier of risk and notes that even this risk can be mitigated by reasonable accommodations such as spacing tables appropriately, encouraging mask wearing by servers, frequent sanitizing of surfaces, and other actions that are well within the capability of County restaurants.

33.     Many of the contact tracing studies in the scientific literature that document the most common sources of spread of COVID infection show no evidence suggesting that outdoor dining is more likely to spread the COVID virus than the activities – including private gatherings – that remain permissible.

34.     Grocery stores have seen unprecedented rates of coronavirus infections making it likelier than ever that a co-worker or customer could be ill, and that a single case could multiply into dozens.[7]

---

[7] Available as of the date of filing at https://www.latimes.com/california/story/2020-12-20/coronavirus-outbreaks-los-angeles-grocery-stores-essential-businesses?utm_source=sfmc_100035609&utm_medium=email&utm_campaign=News+Alert%3a+Supermarkets+in+L.A.+County+see+unprecedented+coronavirus+infection+rates+-+00000176-811&utm_term=https%3a%2f%2fwww.latimes.com%2fcalifornia%2fstory%2f2020-12-20%2fcoronavirus-outbreaks-los-angeles-grocery-stores-essential-businesses&utm_id=19649&sfmc_id=2418716

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

35.     Since issuing his first order in March 2020, Newsom has relied on nothing more than general "field investigations", none of which specifically show a relation of outdoor dining at restaurants to the spread of COVOD-19. Evidence and analysis available since at least May 2020 further establish that actions at issue in this case—the widespread closure of outdoor dining—cannot be justified as rationally necessary to protect public health and constitute nothing more than arbitrary and capricious acts.

36.     Nevertheless, and based on the rise of reported COVID-19 cases and hospitalizations that began in mid-November 2020, Newsom announced on December 3, 2020 his newest Regional Stay At Home Order ("Regional Order"). Coincidentally, Newsom issued the Regional Order the very same day that a state court in Los Angeles County ordered the Los Angeles County Department of Health ("DPH") to provide specific evidence detailing that the closure of outdoor dining under its "County Restaurant Closure Order" was rationally related to halting the spread of COVID-19.

37.     The Regional Order, which took effect on December 5, 2020 and, pertinent to the Southern California Region, is triggered if the Southern California Region's ICU capacity falls below 15%. The Regional Order is effective for three weeks after the trigger. It affects numerous activities and businesses, including Plaintiff's. In pertinent part, the Order prohibits restaurant dining, indoor or outdoor, permitting only take-out or pick-up. The Regional Order will end if the region's ICU capacity projection for four weeks (three weeks after the order) is above or equal to 15%. Conversely, the Order continues if the ICU projection for that period is less than 15%. The assessment will occur on a weekly basis.

38.     As a part of the Regional Order, Dr. Pan, an unelected bureaucrat stated:

"I will continue to monitor the epidemiological data and will modify this Regional Stay-at Home Order as required by the evolving public health conditions. If I determine that it is necessary to change the Terms of this Order, or otherwise modify the Regional Stay-at-Home Order, these modifications will be posted at covid19.ca.gov." ~ Paragraph 8 of Exh. 1.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

39.     As of December 6, 2020, the Regional Order has been triggered by the fact that the Southern California Region has less than 15% ICU capacity, resulting in Plaintiff shutting down its outdoor dining activities after spending tens of thousands of dollars in complying with the State of California's "Safe Re-Opening Guidelines."

40.     Plaintiff is prohibited from serving meals to the public either indoors or outdoors at its establishment even though the CDC has promulgated guidance for restaurants as a result of COVID-19 that are safely being followed across the U.S.[8]

41.     Plaintiff is ready willing and able to follow CDC guidance for serving its cliental.

42.     On information and belief, Plaintiff has never had a single reported case of coronavirus traced back to its establishment. Plaintiff has at all times done its best to comply with all local and state regulations related to curbing the spread of COVID-19.

43.     During a COVID update on December 8, 2020 broadcasted by the California Department of Public Health, Dr. Mark Ghaly admitted that the State conducted no risk-benefit analysis whatsoever when deciding to implement this new Regional Order, explaining that: "The fact is the transmission is now so widespread across every state that most non-essential activities create a serious risk of transmission…Rather than focus on the sector-by-sector restrictions, the top of our message is, as much as you can, stay at home…"[9]

44.     In that same December 8, 2020 update, Dr. Ghaly specifically addressed the State's rational of including the ban on outdoor dining in Newsom's newest Regional Order: "The decision to include among other sectors, outdoor dining, and limiting that, turning to restaurants to deliver and provide takeout options instead really

---

[8] Available as of the date of filing at https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/business-employers/bars-restaurants.html

[9] Mark Ghaly M.D., M.P.H., *12/8/2020: CHHS Secretary Dr. Mark Ghaly Provides Update on COVID-19 in California*, California Department of Public Health, available as of the date of filing at https://www.youtube.com/watch?v=ydrEN5zSS-s.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

has to do with the goal of *trying to keep people at home*, not a comment on the relative safety of outdoor dining."[10]

45.     In that same breath of urging the public to stay home, Dr. Ghaly went on to encourage, "Californians are able to do important things… visit a local retailer or worship the outdoors."[11] Newsom echoed this contradicting message that staying indoors was the goal of lowering the spread of COVID-19 when he tweeted on December 10, 2020, "*Get outdoors with your household safely*. Explore your neighborhood and CA's beauty! ... Go to a beach. Take your kids to a playground. Go on a hike. Walk your dog. We can get through this."

46.     Further, Dr. Ghaly admitted that there were lesser restrictive means available to ensure outdoor dining could continue safely, "***we have worked hard with [the restaurant] industry to create safer ways for outdoor dining to happen***. Keeping tables farther apart, to ensuring masking happens as much as possible, to create opportunities for air circulation, ***to continue all of those factors make sectors like outdoor dining a lower risk.***"[12]

47.     While "Essential" businesses continue to operate, and indeed, turn a profit (if not historical profits) during this time of crisis, Plaintiff's "Non-Essential" restaurant business that was forced to evolve into an outdoor dining restaurant during this pandemic, and now cannot even operate in outdoor form, has suffered immensely and continues to suffer while other non-essential businesses have been allowed to open. Defendants' unconstitutionally restrictive Regional Orders have had immense disparate impact across every segment or sector of business in California. Accordingly, Plaintiff seeks to enjoin the enforcement of the Regional Orders.

48.     Defendants' Regional Orders are not "narrowly tailored" to further any compelling governmental interest. Defendants' Regional Orders are neither rationally

---

[10] *Id.*
[11] *Id.*
[12] *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

related to the State's interest in curbing the spread of COVID-19. Defendants have granted numerous special exemptions to their bans on public gatherings and conduct, including for purportedly "Essential" businesses and activities, provided that social distancing practices are observed. Since these gatherings may be permitted, there can be no doubt that Defendants may, and therefore must, permit Plaintiff to engage in equivalent business activities provided that Plaintiff also adhere to the social distancing guidelines currently in place.

49.     Specifically, the State of California did not initially include Hollywood studios in the list of "Essential Workers" issued in March 2020. But a revised listing, issued in April 2020, declared that workers involved in "the entertainment industries, studios, and other related establishments" to be essential "provided they follow COVID-19 public health guidance around physical distancing."[13]

50.     Then, in November 2020, Newsom provided a *special exemption* to television and film production companies for his earlier limited shelter-in-place order issued before Thanksgiving, which featured a curfew from 10 p.m. to 5 a.m. The workforce on film sets could continue operations throughout the night.[14]

51.     Earlier in December 2020, a central coronavirus testing site at the Union Station building faced a temporary closure to accommodate the filming of a remake of "She's all That" featuring TikTok star Addison Rae. Some 500 appointments were canceled. The negative news cycle resulted in an intervention from the mayor's office to keep the testing site open.[15]

---

[13] Available as of the date of filing at:
https://files.covid19.ca.gov/pdf/EssentialCriticalInfrastructureWorkers.pdf
[14] Available as of the date of filing at https://deadline.com/2020/11/entertainment-industry-workers-exempt-from-california-governor-gavin-newsoms-new-stay-at-home-order-1234619285/
[15] Available as of the date of filing at https://www.nytimes.com/2020/12/01/us/virus-testing-Union-Station-Los-Angeles.html

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

52.     Around the same time, Plaintiff's principal—Angela Marsden—posted a video just after her establishment's outdoor dining area had been shut down by virtue of Defendants' Regional Orders. Ms. Marsden's video went viral[16]. In her video, Ms. Marsden displays the hypocrisy, lunacy and total disparity between her own socially distanced outdoor set-up at her establishment juxtaposed by a similarly situated set-up containing outdoor tents and chairs associated with the NBC Universal production set for the series "Good Girls," which was allowed to proceed as essential work.[17]

53.     The disparity in exemptions, such as described herein, is causally related to state officials, such as Newsom, supporting their campaign donors at the expense of small businesses and has nothing to do with science and data.

54.     On November 6, 2020, Newsom attended the infamous dinner at French Laundry for Jason Kinney's birthday in which the bar tab reached $15,000.00 and dinners started at $310.00. Jason Kinney is a lobbyist, whose biggest client is Netflix, which has been allowed to operate during the latest round of forced closures as intensive care hospital capacity has dwindled across the state.[18]

55.     It is no secret that Hollywood lobbyists and insiders have leveraged their industry's economic and political contributions to the state's political power brokers and Democratic machine in order to insulate it from COVID-19 related regulations.

56.     To highlight this issue, just Netflix's quarterly lobbying spending alone nearly tripled as it jumped from $24,437.00 to $70,725.00 a quarter. The jump in spending includes increased fees to Axiom Advisors, the firm founded by Kinney.

---

[16] Available as of the date of filing at https://www.cnn.com/videos/business/2020/12/06/california-restrictions-restaurant-owner-angela-marsden-vercammen-nr-vpx.cnn
[17] Available as of the date of filing at https://www.youtube.com/watch?v=3-86gfJosHc&ab_channel=ABC7
[18] Available as of the date of filing at https://californiaglobe.com/section-2/gov-newsoms-hollywood-lockdown-exemptions-facilitated-by-lobbyist-pals/

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

57. Further, the "Big Six" production studios have donated heavily to elected officials and campaigns across California. Netflix and its employees gave $135,950.00; Walt Disney and Co. and its employees gave $183,999.00; Paramount and its employees gave $119,308.00; Sony and its employees gave $27,961.00; Comcast-NBCUniversal and its employees gave $251,588.00; and Warner Bros. and its employees gave $77,050.00.[19]

58. The campaign donations were spent as the firms also deployed lobbyists to shape the pandemic rules governing the entertainment industry.[20]

59. Plaintiff has standing to bring this lawsuit since it is an aggrieved in fact business that is the subject of enforcement of the overbroad and unconstitutional Regional Orders, which have the effect of forcing Plaintiff to bear a public burden by virtually eviscerating Plaintiff's ability to operate its business.

60. Unless and until injunctive relief is granted, Plaintiff will continue to suffer irreparable harm for which it is left without an adequate remedy at law, in that it can be subject to criminal cases (i.e. misdemeanor citations and fines), have its liquor license and business license suspended or withdrawn, or have its utilities shut off by the DWP based on the enforcement of the Regional Orders by the Los Angeles County Sheriff's Department. Newsom has made it a point to "prosecute" and "fine" all non-conforming

---

[19] Available as of the date of filing at https://theintercept.com/2020/12/11/hollywood-covid-filming-california-lockdown/

[20] Mercury Public Affairs, a bipartisan lobbying firm that features former Assembly Speaker Fabian Nuñez and former LA Mayor Antonio Villaraigosa as partners, is currently registered to lobby LA officials on filming issues on behalf of both Comcast-NBCUniversal and the Motion Picture Association. Tracy Arnold, Newsom's chief deputy cabinet secretary, previously served as partner at Mercury Public Affairs. Paramount Pictures' lobbyist Greg Campbell previously served as chief of staff to former Assembly Speaker John Pérez. The disclosure for his firm shows that Campbell lobbied the administration on the essential worker memorandum from the governor's economic affairs office earlier this year. Campbell jointly serves clients through a partnership with a lobbyist named Jim DeBoo. That relationship may serve him well. On Wednesday, DeBoo was announced as Newsom's new chief of staff to replace outgoing chief of staff Ann O'Leary. Available as of the date of filing at https://theintercept.com/2020/12/11/hollywood-covid-filming-california-lockdown/

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

"Non-Essential" businesses that refuse to close their doors and shut down their lawful business operations. And, on information and belief, the State has even gone so far as to threaten criminal prosecutions, including murder charges, for any non-compliant businesses that refuse to shut down by serving food and drink indoors or outdoors which lead to a COVID-19 infection among a patron or guest that causes death.

## CLAIMS

### FIRST CLAIM FOR RELIEF

### Violation of First Amendment Freedom of Assembly Clause

### (42 U.S.C. § 1983)

(*By Plaintiff against all Defendants*)

61.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

62.     The Regional Orders and Defendants' enforcement thereof violates the First Amendment, both facially and as-applied to Plaintiff. The First Amendment of the Constitution protects the "right of the people peaceably to assemble." The Freedom of Assembly Clause was incorporated against the states in *De Jonge v. Oregon*, 299 U.S. 353 (1937).

63.     "The right of free speech, the right to teach, and the right of assembly are, of course, fundamental rights." *Whitney v. California*, 274 U.S. 357, 373 (1927). When a government practice restricts fundamental rights, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose and, even then, only if no less restrictive alternative is available. *See, e.g.*, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16-17 (1973); *Dunn v. Blumstein*, 405 U.S. 330 (1972).

64.     By denying Plaintiff's ability to conduct outdoor dining which not only previously complied with the State of California's Orders, but also complies with the CDC guidelines for social distancing, Defendants are in violation of the Freedom of Assembly Clause. Defendants cannot meet the no-less-restrictive-alternative test. The CDC's social distancing guidelines are appropriate to limit the spread of COVID-19.

17

Imposing more restrictive requirements that target restaurants and establishments such as Plaintiff's, while at the same time allowing the entertainment industry, major retailers, grocery stores, marijuana dispensaries and others to operate indoors or outdoors is not the least restrictive means of achieving Defendants' public safety goals.

65.     Requiring Plaintiff to abstain from conducting outdoor dining activities, despite substantial modifications to satisfy the public health interests at stake, violates Plaintiff's Constitutional right to peaceably assemble.

66.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from implementing and enforcing the Regional Orders as applied to Plaintiff.

67.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Regional Orders.

68.     Plaintiff has found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### Due Process Clauses of Fifth and Fourteenth Amendments to U.S. Constitution
### (42 U.S.C. § 1983)

(*By Plaintiff against all Defendants*)

69.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

70.     The Regional Orders and Defendants' enforcement thereof violate the Due Process Clauses of the 5th and 14th Amendments, both facially and as-applied to Plaintiff.

71.     The Due Process Clauses of the 5th and 14th Amendment provides, in pertinent part, that: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

72.     As set forth herein, Defendants' Regional Orders have had a disparate impact on Plaintiff and have unfairly targeted Plaintiff's business, specifically its ability to earn a living by conducting outdoor dining, despite the total lack of scientific evidence or data to support the implementation of the Regional Orders as to Plaintiff. As such, Plaintiff has been deprived of its Constitutionally protected liberties and rights.

73.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from implementing and enforcing the Regional Orders.

74.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Regional Orders.

75.     Plaintiff has found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**THIRD CLAIM FOR RELIEF**

**Equal Protection Clause of Fourteenth Amendment to U.S. Constitution**

**(42 U.S.C. § 1983)**

(*By Plaintiff against all Defendants*)

76.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

77.     The Regional Orders and Defendants' enforcement thereof violate the Fourteenth Amendment, both facially and as-applied to Plaintiffs. The Fourteenth Amendment of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Equal protection requires the state to govern impartially—not draw arbitrary distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objection.

19

78.     Defendants intentionally and arbitrarily categorize individuals, businesses and conduct as either "essential" or "non-essential." Those persons or businesses classified as "essential," or as participating in essential services, are permitted to go about their business and activities provided certain social distancing practices are employed. Those classified as "non-essential," or as engaging in non-essential activities (such as Plaintiff), are required to heed the State's directives and adjust and/or shut down aspects of their businesses—up to and including the entirety of their operations.

79.     Strict scrutiny under the Equal Protection Clause applies where, as here, the classification impinges on a fundamental right, including the right to assembly, the right to travel, among others.

80.     Defendants cannot satisfy strict scrutiny, because their arbitrary classifications are not narrowly tailored measures that further compelling government interests, for the reasons stated above.

81.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Regional Orders.

82.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Regional Orders.

83.     Plaintiff has found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**FOURTH CLAIM FOR RELIEF**

**Due Process Clause of Fifth and Fourteenth Amendment to U.S. Constitution**

**(42 U.S.C. § 1983)**

(*By Plaintiff against all Defendants*)

84.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

85.     The Executive Orders and Defendants' enforcement thereof violate the substantive and procedural aspects of the Due Process Clauses of the 5th and 14th Amendments, both facially and as-applied to Plaintiff.

86.     The Due Process Clause of the 14th Amendment provides, in pertinent part, that: "No State shall … deprive any person of life, liberty, or property, without due process of law[.]"

87.     The Due Process Clause of the 5th Amendment provides in pertinent part that: "No person shall be … deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

88.     As set forth herein, Defendants' Executive Orders have unlawfully violated Plaintiff's procedural due process rights by delegating authority to an unelected, appointed bureaucrat who is exercising this power to deprive Plaintiff from being able to operate its lawful businesses at all.

89.     Procedural due process "protects rights created by state law and guarantees that no significant deprivation of life, liberty or property will take place until notice has been provided and the individual has a meaningful opportunity to be heard." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

90.     Defendants also have violated Plaintiff's procedural due process rights by ignoring California law as to the promulgation of administrative regulations as set forth in the California Administrative Procedures Act (Cal. Gov. Code §11340 *et. seq.*), including but not limited to the procedures for enacting emergency regulations (Cal. Gov. Code §11346.1).

91.     "No right granted or secured by the Constitution of the United States can be impaired or destroyed by a state enactment, whatever may be the source from which the power to pass such enactment may have been derived." *Connolly v. Union Sewer Pipe Co.*, 184 U.S. 540, 558 (1902).

92.     The Due Process clause "forbids the government to infringe [on] fundamental liberty interests at all, no matter what process is provided, unless the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

infringement is narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotations omitted).

93.   This applies to "fundamental rights and liberties which are deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *Chavez v. Martinez*, 538 U.S. 760, 775 (2003) (internal quotations and citations omitted) (*partially overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)).

94.   Substantive due process "includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997) (citation omitted).

95.   It protects—in addition to all the enumerated freedoms in the Bill of Rights—a wide array of liberties.

96.   Citizens have a fundamental right to be free from confinement without due process of law. *Hamdi v. Rumsfeld*, 542 U.S. 507, 531 (2004).

97.   It is self-evident that the right to freely come and go from one's home is a fundamental right. *See Aptheker,* 378 U.S. at 520.

98.   The "involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law." *Connor v. Donaldson*, 422 U.S. 563, 580 (1975). Also, any "confinement must cease when those reasons [giving rise to it] no longer exist." *Id*.

99.   Quarantine laws may be permitted as to infected individuals, but not the public at large. *Robinson v. State of California*, 370 U.S. 660, 666 (1962).

100.   A quarantine law that banned introduction of cattle into a state for several months of the year regardless of whether the cattle were diseased or not was held to be unconstitutional. *Railroad Company v. Husen*, 95 U.S. 465, 473 (1877).

101.   Both the Executive Orders and the Regional Orders mandate that Californians stay at home and shut down their "non-essential" businesses.

102.    Both the Executive Orders and the Regional Orders violate Plaintiff's constitutional right to liberty.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

103.   The State Order is tantamount to a state-wide confinement of most Californians, regardless of whether they are infected with COVID-19.

104.   Unless enjoined, Defendants will act under color of state law to deprive Plaintiffs of their right to liberty as protected by the Due Process Clause.

105.   Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from implementing and enforcing the Regional Orders.

106.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Regional Orders.

107.   Plaintiff has found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

A.   An order and judgment declaring that the Regional Orders, facially and as-applied to Plaintiff, violates the First, Fifth, and Fourteenth Amendments to the U.S. Constitution.

B.   An order and judgment declaring that the Executive Orders, facially and as-applied to Plaintiff, violate the Fifth and Fourteenth Amendments to the U.S. Constitution.

C.   An order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing the Regional Orders;

D.   An order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing the Executive Orders;

E.   For attorneys' fees and costs;

F.   Such other and further relief as the Court deems appropriate and just.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Date: December 20, 2020          **DHILLON LAW GROUP INC.**


                               By:   /s/ *Harmeet K. Dhillon*
                                     HARMEET K. DHILLON (SBN: 207873)
                                     harmeet@dhillonlaw.com
                                     MARK P. MEUSER (SBN: 231335)
                                     mmeuser@dhillonlaw.com


                                     **GERAGOS & GERAGOS, APC**


                               By:  /s/ *Mark J. Geragos*
                                    MARK J. GERAGOS (SBN: 108325)
                                    mark@geragos.com
                                    ALEXANDRA KAZARIAN (SBN: 244494)
                                    ak@geragos.com
                                    MATTHEW M. HOESLY (SBN: 289593)
                                    mhoesly@geragos.com

                                    *Attorneys for Plaintiff,*
                                    CALM VENTURES, LLC dba PINEAPPLE
                                    HILL SALOON AND GRILL

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF